## Ondrovic *v.* James City Gas Company, Appellant.

Argued November 14, 1967. Before ERVIN, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WRIGHT, J., absent).

*H. Ray Pope, Jr.,* with him *Ralph N. DeCamp,* for appellant.

*Dominic J. Ferraro,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY ERVIN, P. J., December 14, 1967:

This is an appeal from orders of the Pennsylvania Public Utility Commission, dated July 25, 1966 and August 21, 1967, sustaining complaints against appellant, James City Gas Company, on inadequacy of service, and directing the appellant either (1) to voluntarily transfer its 21 customers to any public utility able to furnish service in the area, or (2) to completely rebuild and replace its gas distribution system, in accordance with approved engineering standards. We granted a supersedeas which is presently in effect pending disposition of the appeal. The original complainants have not intervened in this appeal.

Appellant is a small family owned utility certificated to furnish gas service in James City, Highland Township, Elk County, and Wetmore Township, McKean County. In 1960 it had 109 domestic customers, which by 1964 were reduced to 18. Two domestic and one commercial customer, added in 1965, made a total of 21 customers in 1966.

A complaint was filed June 8, 1965 against appellant by a group of eleven individuals, including an employee of the competing United Natural Gas Co., alleging failure to maintain proper facilities, and inade-

quate service. Six domestic customers testified that service to their homes was unsatisfactory; that gas pressure was too low to maintain cooking ranges and gas heaters, resulting in frequent interruptions in service. Eleven other witnesses testified that unreliable service required them to use substitute service, such as bottled gas and electricity, for cooking and hot water heating, although eight of these testified they would reinstate gas if adequate service was available. Testimony of Mr. Eddinger, on behalf of complainants, former maintenance employee of appellant for ten years prior to 1963, that appellant's system was in poor condition, was exceedingly general. He did not know whether any pipe replacements had been made since his employment ended in 1963.

E. H. James, president of appellant, stated gas was obtained by pumping from the company's nine wells located five miles from James City. In summary, appellant's president admitted to numerous interruptions in service in the past, but contended that appellant's distribution plant was currently in good operating condition.

In its order of July 25, 1966 directing appellant to sell out or rebuild its entire system, the commission stated: "The Commission has knowledge that the major portion of respondent's existing gas production, transmission, and distribution facilities now serving the James City area have been in continuous operation since about 1910 and that such facilities, after more than 55 years, are probably in a deteriorated condition and could fail at any moment at any given location."

Following this order, appellant filed a petition for rehearing, to permit, inter alia, the testimony of a qualified gas engineer to refute the commission's findings as to the inadequacy of the transmission and distribution system. The commission ordered a further hearing. Appellant's counsel explained that its disinterested en-

gineer was not available at the final hearing. However, appellant's president James, a mechanical engineer, testified that the company's distribution lines of 11,707 feet had, with the exception of 500 feet, been replaced within the past 30 years, gauges had been recently installed, pressures were now adequate, the company's facilities and plant were in good condition, and no recent service complaints had been received. Thus, the commission's guess, based on evidence dehors the record, that appellant's 55 year old system is "probably in a deteriorated condition," is contradicted by the definite testimony of appellant's president as to the condition of the system and the dates of replacement. In so far as the findings of the commission are based on evidence not of record, they cannot be sustained: *Shenandoah Suburban Bus Lines, Inc. Case,* 158 Pa. Superior Ct. 638, 644 (1946), 46 A. 2d 26. Cf. *Merz White Way Tours v. Pa. P.U.C.,* 204 Pa. Superior Ct. 43, 52 (1964), 201 A. 2d 446.

Following the commission order of July 25, 1966, appellant secured gas from another producer in the area rather than from its own wells. This arrangement enabled appellant to overhaul its own transmission system. Appellant agreed not to use its own wells until the transmission system had been corrected to the satisfaction of the commission. However, appellant objects to that part of the commission's final order which would require it to forego use of its own wells in the indefinite future. Mr. James testified appellant had ample supply of gas from Kane Gas Co. with tie-in for emergencies, and was soliciting space-heating and other customers by advertisement in the local paper.

At the rehearing commission counsel agreed that the appellant should have an opportunity to make certain repairs to its transmission and distribution systems. Accordingly counsel for appellant, on July 28, 1967, wrote a letter to the commission stating that repairs

had been made and asking the commission to make an examination and inspection "of the improved distribution system" of appellant. No such inspection was ever made by the commission. Instead, the commission, in its order of August 21, 1967, reiterated the order of July 25, 1966, directing appellant either to transfer its customers to another utility or rebuild its entire system.

In its final order of August 21, 1967 the commission stated it could not accept the testimony of appellant's president that the presently installed distribution facilities were capable of providing adequate service. At the same time, the commission indicated it would rely upon the testimony of an impartial qualified gas engineer, as to the present physical condition of appellant's facilities to furnish service. It is axiomatic that the order of the commission, if supported by evidence, will not be reversed by this Court: *Pittsburgh Rwys. Co. v. Pa. P.U.C.*, 198 Pa. Superior Ct. 415, 427, 182 A. 2d 80 (1962); *Lang v. Pa. P.U.C.*, 207 Pa. Superior Ct. 312, 320, 217 A. 2d 750 (1966); *Wagner v. Pa. P.U.C.*, 209 Pa. Superior Ct. 102, 108, 225 A. 2d 87 (1966). However, here we have the unrefuted testimony of the president of appellant that the necessary repairs had been made, and the commission's clear indication that it would accept the report of an impartial engineer. It would be a relatively simple matter for the commission to send a qualified engineer to make an inspection of appellant's present system and report on its condition and adequacy to render public service.

The commission admits its final order of August 21, 1967 directing complete rebuilding or transfer, is drastic, and that it would ordinarily direct the utility to render adequate service by improving its presently existing system. There is evidence in the record which shows competitors in the area are desirous of buying the appellant company. However, under the commis-

sion's order of complete replacement of appellant's gas system, a sale would be highly improbable. We see no reason why an inspection should not be made by an impartial gas engineer, so that the exact condition of appellant's system and the question of the ability of appellant to render public service in the area, under its charter, could be determined with a reasonable degree of accuracy. Indeed, the commission in its brief states: "There is little question but that the Commission, upon recommendation of a qualified, impartial gas works engineer, would approve the retention of such parts of Appellant's system as would be useful for the service, . . . of the public." Under these circumstances, the commission abused its discretion in not affording appellant the simple remedy of an inspection of its system as presently constituted, to ascertain its adequacy to render public service.

Appellant also serviced two customers in Wetmore Township, McKean County, namely, the residence of appellant's president and a local water company owned and operated by appellant. The commission indicated these noncomplaining customers were not part of the public and could be served privately if appellant ceased to operate as a public utility. Any decision on possible future service to these two "customers" is premature, until the commission decides, upon inspection, whether appellant can render public utility service in general.

The order of the commission is modified and the record remitted for further proceedings, with directions to the commission to order an inspection of appellant's system to determine its present adequacy.